RECEIVED BY MAIL

MAR 0 2 2026

CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

26 cv 51

# Exhibit A
# Proposed First Amended Complaint

SCANNED

MAR 0 2 2026

U.S. DISTRICT COURT MPLS

RECEIVED BY MAIL

MAR 0 2 2026

CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

---

ANTON J. LAZZARO,

               Plaintiff,

v.

PAM BONDI, in her official capacity as
Attorney General of the United States; and
ILHAN OMAR, in her individual and
official capacities,

               Defendant.

Case No. 0:26-CV-00051-PJS-LIB

---

**FIRST AMENDED COMPLAINT
FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES**

---

For his First Amended Complaint against Defendants, Plaintiff Anton J. Lazzaro alleges as follows:

### Introduction

1. In 2020, Plaintiff Anton J. Lazzaro was managing a political campaign for Lacy Johnson, the Republican challenger to incumbent United States Representative Ilhan Omar in Minnesota's Fifth Congressional District.

2. During the campaign, Lazzaro spent over $300,000 of his personal funds to investigate allegations that Omar married her brother in an immigration fraud scheme.

3. Lazzaro's investigators collected multiple DNA samples from items discarded by Omar and her husband. An independent DNA laboratory confirmed that there was a 99.9999% probability that Omar and her then-husband are biological siblings.

4. Lazzaro publicized the findings on https://IlhanOmarDNA.com, where he offered Omar $1,000,000 and his red Ferrari if Omar took a 5-second DNA swab test and proved him wrong.

5.    Omar denied Lazzaro's findings, but refused to take the test.

6.    In addition, Omar has retaliated against Lazzaro, including by defaming Lazzaro in the national media, in which Omar has called Lazzaro a "liar," among other slurs.

7.    Lazzaro is not a liar. His statements are supported by the findings from a professionally-conducted private investigation and independently-verified scientific evidence.

8.    Omar's defamatory statements are defamation per se, because it would be a crime for Lazzaro to knowingly falsely accuse a member of Congress of committing federal immigration and tax fraud and crimes against the State of Minnesota and report those crimes to law enforcement agencies, as Lazzaro did.

9.    Omar's defamatory statements have damaged Lazzaro; he is being cast as a liar and an Alex Jones-style "right-wing conspiracy theorist" in the national media.

10.    Beyond defaming Lazzaro, Omar's retaliation has chilled Lazzaro from participating in the national political debate that has recently arisen over Omar's suitability to hold political office.

11.    On December 25, 2025, for example, in a TruthSocial post, President Trump called for Omar to be "thrown out of the United States" based on Lazzaro's allegations. Lazzaro's allegations have also been covered by Fox News, the Will Cain Show, the Minnesota Star Tribune and conservative media.

12.    Lazzaro would like to join the calls for Omar to be removed from office and would like to grant interviews to the many media outlets that are covering his findings.

13.    Lazzaro is chilled from doing so.

14.    The last time Lazzaro publicized his allegations against Omar, Lazzaro was selectively investigated for and charged with being a sex trafficker based on allegations

2

that he engaged in consensual sex with women of the age of majority in Minnesota in his "Sugar Daddy" lifestyle. The millions of other men in the United States who give gifts to their sexual partners have not been subjected to prosecution as sex traffickers.

15.     Lazzaro is now serving a 21-year term of imprisonment after being convicted by a jury of government's creative theory of sex trafficking during a trial in which prosecutors repeated the name "Trump" nine times.

16.     Lazzaro continues to challenge his conviction, but as a person who is incarcerated, is extraordinarily vulnerable to retaliation from Omar, her team and the government.

17.     In this lawsuit, Lazzaro seeks damages based on the harm he has suffered from Omar's defamation, a declaration that Omar and her now ex-husband, Ahmed Nur Said Elmi, are biological siblings, injunctive relief prohibiting the Defendants from retaliating against Lazzaro, and such other relief as the Court deems just and equitable.

## Parties

18.     Plaintiff Anton Lazzaro is a citizen of the State of Minnesota and lived at all times relevant to this complaint in Hennepin County, Minnesota.

19.     Defendant Ilhan Omar is a United States Representative who represents in Minnesota's Fifth Congressional District. Omar is sued in her individual and official capacities.

20.     Defendant Pam Bondi is the Attorney General of the United States. Bondi is sued in her official capacity.

## Jurisdiction and Venue

21.     The Court has subject matter jurisdiction over Lazzaro's claims for declaratory and injunctive relief pursuant to 28 U.S.C. § 1331 because they arise under the Constitution of the United States—namely, the First Amendment to the Constitution.

22.     The Court has the power to issue a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2022, and the power to issue an injunction pursuant to its inherent equitable authority.

23.     The Court has supplemental jurisdiction over Lazzaro's Minnesota defamation claim pursuant to 28 U.S.C. § 1367 because the claim is so related to claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

24.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because this is the district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated.

25.     The Court has supplemental jurisdiction over Lazzaro's state law defamation claim pursuant to 28 U.S.C. § 1367(a).

## Allegations Common to all Claims

26.     In 2020, Plaintiff Anton J. Lazzaro was managing the Congressional campaign for Lacy Johnson, the Republican candidate then challenging Representative Ilhan Omar in Minnesota's Fifth Congressional District.

27.     Early in the campaign, Lazzaro received a phone call from a Somali-American Republican activist. The man asked Lazzaro why the campaign wasn't focusing on Omar's illicit marriage to her brother in an immigration fraud scheme.

4

28. Lazzaro was initially dismissive of the allegations, suggesting they were reminiscent of the never-proven allegations that President Barack Obama was born in Kenya and other similar "conspiracy theories."

29. The activist, however, insisted that the allegations were genuine, and a well-established fact within the Minneapolis Somali-American community.

30. Intrigued, Lazzaro had an idea. If the allegations were indeed genuine, they could easily be proven (or disproven) via publicly obtainable DNA samples from Omar and her now ex-husband, Ahmed Nur Said Elmi.

31. After transitioning from the Johnson campaign leadership to his Political Action Committee, Big Tent Republicans, Lazzaro contracted with former Federal Bureau of Investigation agents and MI6 agents from the United Kingdom to privately investigate the allegations.

32. The investigation spanned Minneapolis, Washington D.C., London and Nairobi.

33. Collecting Omar's DNA was accomplished by the private investigative firm, Toltec Investigations, which gathered multiple samples from Omar's publicly accessible discarded trash outside of her Washington, D.C., residence.

34. Elmi's whereabouts were unknown.

35. After Lazzaro spent $300,000, agents in the United Kingdom finally tracked Elmi to a town in England where he was temporarily residing.

36. Agents collected DNA from Elmi in accordance with the laws of the United Kingdom and samples were sent to Endeavor DNA Laboratories, a private laboratory in the United States.

37. Within days, Endeavor confirmed that the samples from Omar and Elmi were a 99.9999% probability match of full siblingship. See Exhibit A, DNA Report Screenshot.

5

38. Throughout the investigation, Lazzaro repeatedly privately and publicly contacted federal authorities to inquire why Omar had not been investigated for the matter. For example, on October 29, 2020, at 10:44 a.m. Lazzaro sent a tweet from his Twitter handle @GOPtony to @FBIMinneapolis: "Why are you still covering up the fact that @IlhanMN married her brother? Getting pretty embarrassing!"

39. Lazzaro also contacted Representative Omar's Congressional office and campaign office, both of which denied Lazzaro's allegations.

40. Lazzaro's DNA evidence was featured in the New York Post[1], FOX News[2], the U.K. Daily Mail[3], and several other news outlets[4].

41. Lazzaro also publicly offered Omar $1,000,000 and his red Ferrari if she took a five-second DNA swab test and disproved his allegations. The offer is still published on a website dedicated to Lazzaro's allegations: https://IlhanOmarDNA.com.

42. Omar ignored the offer[5] and did not respond to any requests for comment from the media outlets reporting the evidence.

---

[1] https://nypost.com/2021/08/15/fbi-dodged-ilhanomar-bro-wed-probe-devine/

[2] https://www.dailymail.co.uk/news/article-9891015/Claims-DNA-match-proves-Ilhan-Omar-married-brother.html

[3] https://foxnews.com/video/b268538170001

[4] https://m.youtube.com/watch?=jAfnXIm9xWA (Tucker Carlson segment about Lazzaro's investigation into Omar); http://yahoo.com/entertainment/tucker-guest-source-provde-ilhan-024400226.html (article discussing Lazzaro's role in bringing allegations to light)

[5] Unlike Omar, who has refused to take a DNA test to refute Lazzaro's allegations, The President and First Lady of France have brought defamation claims against a blogger who has risen to prominence with allegations that the First Lady of France is, in fact, a biological man, and have offered scientific evidence that conclusively proves the point. *Macrons to Offer Scientific Evidence to Prove Brigitte is a Woman, Lawyer Says*, https:www.bbc.com/news/articles/ckg311j5nxdo

6

43. After Joe Biden won 2020 United States presidential election and Johnson was defeated by Omar, Omar's retaliatory campaign went into full swing.

44. On December 15, 2020, Lazzaro was raised by dozens of heavily armed FBI agents at his downtown Minneapolis condominium.

45. Lazzaro had no idea why dozens of armed agents were raiding him, and only suspected it had to do with the Omar investigation.

46. Unbeknownst to Lazzaro, the raid was actually signed off as part of an investigation into alleged human trafficking, which was merely a pretext intended to silence Lazzaro.

47. As background, during the summer of 2020, at the peak of the COVID-19 pandemic, Lazzaro, then 29-years old, met and 18-year-old woman on a dating site. When bars and clubs were closed in Minnesota, Lazzaro and Gisela Medina became close friends along with several of her extended fried group. This included a handful of young women between the ages of 16-20, with whom Lazzaro had lawful consensual sex, as the age of consent in Minnesota and many other states is 16.

48. Lazzaro ultimately began a serious relationship with one of the young women, and Lazzaro remains in that relationship today.

49. Lazzaro showered all of the young women he met with gifts, regardless of whether he ultimately had sex with them.

50. Eight months after the December 15, 2020, raid, Lazzaro was indicted and arrested under the federal sex trafficking statute. Within minutes of his arrest, before any local media could report the story, it was leaked by the United States Attorneys' office to the left-wing new site, The Daily Beast.[6]

---

[6] https://the dailybeast.com/gop-strategist-anton-lazzaro-arrested-for-underage-sex-trafficking

7

51.     The only other individual that has ever been investigated under a "Sugar Daddy" theory of sex trafficking is former Republican congressman and Attorney General nominee Matt Gaetz.

52.     Lazzaro's arrest was made even more incredible by the fact that one other person had been arrested for sex trafficking in Minnesota in the two years prior to Lazzaro's arrest.

53.     The prosecutors assigned to Lazzaro's case had strong Democratic connections. For example, one assistant United States Attorney assigned to Lazzaro's case had made donations to Democratic candidates equating to more than the collective donations of all of the other 25+ assistant United States attorneys in the District of Minnesota.

54.     The Federal Bureau of Investigation also issued multiple subpoenas directed at Lazzaro's Political Action Committee's bank accounts, website and social media accounts—an unusual step for an alleged "sex trafficking" investigation.

55.     At trial, the name "Trump" was mentioned on nine separate occurrences.

56.     Lazzaro is not requesting relief from his conviction in this complaint; rather, Lazzaro continues to challenge his conviction via proper channels. The foregoing allegations are made to demonstrate the basis of Lazzaro's chill.

57.     Now, five years after the FBI raid on Lazzaro's condo, President Donald J. Trump has once again reignited the controversy surrounding Omar's marriage to her brother by highlighting the evidence of Omar's immigration and tax scheme in a series of public statements and social media posts.

58.     Several outlets have reported on the matter.

59.     Instead of maintaining her silence, Omar has chosen to categorically deny Lazzaro's evidence. For example, in a December 9, 2025, FOX News segment on The Will

8

Cain Show, among others, Omar falsely stated that "Accusations that the congresswoman married her brother are absurd and offensive. This is right-wing fodder with no basis in reality. It is disgusting that the right-wing continues to spread falsehoods for clicks."

60.     In response to a December 26, 2025, Star Tribune[7] article, Omar, referring to Lazzaro's https:IlhanOmarDNA.com website, stated, "I've always known that [the allegation I married my brother for immigration fraud purposes] is based on some stupid blog that was up for a couple of hours that went away and they have been in this sort of conspiracy [loop]."

61.     Omar has also categorically denied the allegations on a number of Sunday morning news shows as well.

62.     In these statements, Omar has not only stated that Lazzaro is a liar, but has labeled him a "right-wing" conspiracy theorist.

63.     Lazzaro is no such thing. Before being federally indicted, Lazzaro was a respected political activist operating the Big Tent Republicans PAC. The PAC focused on reaching out to minority votes, the LGBT community, women, and other groups that were not traditionally Republican supporters.

64.     By accusing Lazzaro of lying about her committing immigration fraud, Omar is accusing Lazzaro of committing state and federal crimes. Minn. Stat. § 609.505 criminalizes false accusations of criminal activity. Minn. Stat. § 609.765 provides a criminal remedy for defamation. Minnesota provides a civil remedy for defamation as well. At the federal level, Lazzaro would have also violated 18 U.S.C. § 1001, based on his social media activity directed at the Minneapolis FBI office and other federal agencies.

---

[7] https:Kwww.startribune.com/Ilhan-omar-defiant-donald-trump-calls-somalia-garbage/601549668

65.     Lazzaro would like to contribute to the national debate over Omar's suitability for public office considering his evidence of Omar's participation in an immigration fraud scheme and file a formal criminal complaint with the Federal Bureau of Investigation regarding Omar's alleged conduct, but he is objectively and subjectively chilled from doing so.

66.     The last time Lazzaro accused Omar of marrying her biological brother in furtherance of immigration and tax fraud schemes, he was ostensibly at Omar's direction immediately investigated by liberal members of the United States Attorney's office under a creative theory of sex trafficking, arrested and sentenced to a shocking 21-year term of imprisonment based on allegations that he gave gifts to his sexual partners, as normal people do.

67.     Omar is also violating Lazzaro's rights under Minnesota's civil and criminal defamation laws.

68.     Lazzaro's status as an incarcerated person increases Omar's ability to retaliate against Lazzaro. With a call from Omar's office, Lazzaro could be subjected to administrative detention, shipped across the United States, blocked from exercising his First Amendment rights to speak with the press, and subject to other deprivations of his rights.

69.     Lazzaro is forced to self-censor because of his credible fear of retaliation from Omar.

70.     In addition, the Federal Bureau of Investigation disbelieved Lazzaro's allegations, Lazzaro would face a credible threat of prosecution under 18 U.S.C. § 1001, which criminalizes false statements to federal officials.

71.     Lazzaro also reasonably fears prosecution under other federal and state statutes.

10

72. This fear is informed by the temporal proximity between Lazzaro's prior reporting activity and the subsequent raid and prosecution.

73. Lazzaro's chill is ongoing and prevents him from engaging in constitutionally protected petitioning activity.

74. A full report of Lazzaro's involvement with Omar is attached as Exhibit B hereto, which is incorporated as if fully set forth herein.

### Count I: Injunctive Relief—Non-Retaliation Order
### (Against All Defendants)

75. Lazzaro re-alleges all the foregoing allegations as if set forth fully herein.

76. The First Amendment prohibits retaliation against persons on account of their exercising rights under the First Amendment.

77. Lazzaro has a credible fear that Omar will take adverse action against him on account of his engaging in protected political speech regarding Omar's suitability to serve as a member of the United States House of Representatives in light of her participation in immigration and tax fraud schemes and for petitioning the government to initiate criminal charges against Omar.

78. Omar's retaliation would chill a person of ordinary firmness.

79. Omar's expected adverse actions are not justified by social, law-enforcement or penological interests.

80. The threat of ongoing First Amendment retaliation causes ongoing and irreparable harm to Lazzaro, who has no adequate remedy at law. Absent immediate injunctive relief, Lazzaro will continue to suffer irreparable harm.

### Count II: First Amendment As-Applied Challenge to 18 U.S.C. § 1001
### (Against Attorney General)

81. Lazzaro re-alleges all the foregoing allegations as if set forth fully herein.

11

82.     18 U.S.C. § 1001, as applied to Lazzaro, criminalizes protected petitioning activity.

83.     The statute imposes an unconstitutional chilling effect when applied to good-faith whistleblowing.

84.     The threat of prosecution under 18 U.S.C. § 1001 causes ongoing and irreparable harm to Lazzaro, who has no adequate remedy at law. Absent immediate injunctive relief, Lazzaro will continue to suffer irreparable harm.

### Count III: First Amendment—Prior Restraint/Threatened Enforcement
### (Against All Defendants)

85.     Lazzaro re-alleges all the foregoing allegations as if set forth fully herein.

86.     The threatened enforcement of criminal statutes operates as a prior restraint on speech.

87.     The threat of enforcement is real, credible, and imminent.

88.     The threat of enforcement causes ongoing and irreparable harm to Lazzaro, who had no adequate remedy at law. Absent immediate injunctive relief, Lazzaro will continue to suffer irreparable harm.

### Count IV: Declaratory Judgment—Right to Petition Without Retaliation
### (Against All Defendants)

89.     Lazzaro re-alleges all the foregoing allegations as if set forth fully herein.

90.     Lazzaro seeks a declaration that Defendants may not retaliate against him for reporting Omar's alleged crimes to the Federal Bureau of Investigation.

91.     The threat of retaliation causes ongoing and irreparable harm to Lazzaro, who has no adequate remedy at law. Absent immediate declaratory relief, Lazzaro will continue to suffer irreparable harm.

## Count V: Defamation
### (Against Omar in her individual capacity)

92.    Omar made false statements about Lazzaro as set forth above.

93.    Omar made these statements either knowing they were false or without due regard for the accuracy of the statements.

94.    The statements were made with malice such that they are not entitled to a qualified privilege.

95.    As a direct and proximate result of the wrongful actions of the Defendant, Lazzaro has incurred severe and permanent injuries in mind and body and Defendant has caused him to incur ongoing reputational damages which will impact his future earning capacity, enjoyment of life, and other harm in an amount exceeding $1 million, the exact sum to be proved at trial.

## Count 3: Defamation Per Se
### (Against Omar in her individual capacity)

96.    Lazzaro re-alleges all of the foregoing allegations as if set forth fully herein.

97.    Omar made false statements about Lazzaro as set forth above.

98.    Omar made these statements either knowing they were false or without due regard for the accuracy of the statement.

99.    These statements defamed Lazzaro by accusing him of committing the crimes of defamation and false statements to government officers.

100.    The statements were made with malice such that they are not entitled to a qualified privilege.

101.    As a direct and proximate result of the wrongful actions of Omar, Lazzaro has incurred severe and permanent injuries in mind and body and Omar has caused him to incur ongoing reputational damages which will impact his future earning capacity,

13

enjoyment of life, and other harm in an amount exceeding $1 million, the exact sum to be proved at trial.

102.    As a direct and proximate result of the wrongful actions of Omar, Lazzaro has incurred severe and permanent injuries in mind and body and Omar has caused him to incur ongoing reputational damages which will impact his future earning capacity, enjoyment of life, and other harm in an amount exceeding $1 million, the exact sum to be proved at trial.

*[intentionally left blank]*

14

WHEREFORE, Lazzaro prays for judgment against Defendant Ilhan Omar:

      a.     Damages against Omar for defamation in an amount to be determined by a jury;

      b.     A declaration that Ilhan Omar and her ex-husband, Ahmed Nur Said Elmi, are biological siblings;

      c.     A declaration that 18 U.S.C. § 1001, as applied to Lazzaro's reporting of his allegations against Omar, violates the First Amendment to the United States Constitution.

      d.     An injunction prohibiting Defendants, as well as their officers, agents, employees, attorneys, and all other persons in active concert or participation with her, from coercing, intimidating, threatening, interfering or retaliating against Lazzaro on account of his speech regarding Ilhan's marriage to her biological brother;

      e.     An injunction prohibiting the Attorney General of the United States, as well as their officers, agents, employees, attorneys, and all other persons in active concert or participation with them, from enforcing or threatening to enforce 18 U.S.C. § 1001 against Lazzaro on account of his reporting his allegations against Omar; and

      f.     Granting such other relief as the Court may deem just and equitable.

### Jury Trial Demand

Lazzaro demands a jury trial on all issues so triable.

Respectfully submitted,

Dated: Feb. 25, 2026

Anton J. Lazzaro
59637-509—K3
FCI Sandstone
P.O. Box 1000
Sandstone, MN 55072
*Pro se*

15